NORD, RESPONDENT, *v.* BOSTON AND MONTANA CONSOL-
IDATED COPPER AND SILVER MINING COMPANY,
APPELLANT.

(No. 2,222.)

(Submitted January 10, 1906.  Decided February 10, 1906.)

*New  Trial — Statement — Service—Sufficiency—Waiver—Prin-
cipal  and  Agent—Personal  Injuries—Instructions—Contrib-
utory  Negligence—Assumption  of  Risk—Burden  of  Proof.*

New Trial—Statement—Preparation and Service—District Courts.
    1.  Where, by stipulation of counsel, the time for the preparation and
service of a statement on motion for a new trial had been extended
for ninety days, the district court had power to grant a further ex-
tension, without the consent of the adverse party and upon good
cause shown, within the limit of ninety days prescribed by Code of
Civil Procedure, section 1897, as amended by Session Laws, 1903,
page 38, and service made during the time so granted by the court was
timely.

Same—Constructive Service—When Insufficient.
    2.  Constructive service of a statement on motion for a new trial, by
delivery thereof to a person who, although at one time a stenographer
in the office of the attorney upon whom service was attempted to be
made, was not then in his office or in charge of it but employed else-
where, was insufficient.

Same—Principal and Agent—Ratification.
    3.  An attorney attempting service of a statement on motion for a new
trial upon opposing counsel by delivery thereof to a person who, al-
though at one time in the latter's employ in a clerical capacity, was
then employed elsewhere but assumed to act for him notwithstanding, is
charged with the duty of ascertaining that person's authority for ac-
cepting service, and lack of notice of the clerk's discharge is of no
moment.

Same.
    4.  Where constructive service of a statement on motion for a new
trial was attempted to be made by delivery of a copy thereof to a
former clerk of the attorney to be served, who assumed to act for her
former employer in accepting service and entering into a stipulation
for an extension of time in which to file objections thereto, the
silence of the attorney, upon being asked whether he would repudiate
the action of the clerk, cannot be construed to have been a ratifica-
tion of the clerk's acts.

Same.
    5.  An attorney by securing an order of court extending the time
within which to propose amendments to a statement on motion for a
new trial, without relying upon a stipulation for an extension of
time entered into by a former clerk when no longer in his employ,
did not thereby ratify the clerk's action in accepting service of the
statement at the same time, especially when the order was made with
a reservation of all his rights to object to the settlement of the state-

ment and to the granting of a new trial on the ground of insufficiency of the service.

**Same—Waiver—Burden of Proof.**

6. The burden of proving a waiver of insufficient service of a statement on motion for a new trial rests upon him who alleges it, and the proof must be clear and satisfactory.

**Same—Waiver—Objection to Settlement.**

7. An attorney who at each step taken in the settlement of a statement on motion for a new trial preserved his right to object to its settlement on the ground that legal, timely or sufficient service had not been made, did not waive the failure of service by appearing in court and asking for additional time in which to prepare amendments and thereafter filing same.

**Personal Injuries—Instructions—Contributory Negligence—Assumption of Risk—Burden of Proof.**

8. An instruction, in an action for personal injuries, which told the jury that the burden was upon defendant to show contributory negligence and assumption of risk, was not objectionable, where in other paragraphs of the charge they were informed that their verdict should be for defendant in case *either* defense was established by a preponderance of the evidence.

**Same.**

9. Except in that class of cases of personal injuries where the complaint shows that the proximate cause of the injury was plaintiff's own act, contributory negligence and assumption of risk are affirmative defenses, and the burden of establishing them by a preponderance of the evidence rests upon the defendant.

### ON MOTION FOR REHEARING.

**New Trial—Statement—Service—Principal and Agent.**

10. Where it did not appear that a stenographer in an attorney's office had ever been the agent of her employer for any other purpose than to receive service of papers while in his employ and in his office or in charge of it (Code of Civil Procedure, section 1831), an attorney, in attempting to make service of a statement on motion for a new trial by handing same to such stenographer, then employed elsewhere and located in a different building, did so with full knowledge that she was no longer authorized to accept service of papers for her former employer, and was therefore bound at his peril to ascertain her authority in acting in his behalf.

**Same—Constructive Service—How Made.**

11. If constructive service of a paper is sought to be made upon an attorney, during his absence from his office, by delivery to his clerk, it must be under Code of Civil Procedure, section 1831, by leaving it with the clerk "therein" (the attorney's office), and not by leaving it with the clerk elsewhere.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

Action by Nels Nord against the Boston and Montana Consolidated Copper and Silver Mining Company. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

*Mr. Ransom Cooper,* and *Mr. William T. Pigott,* for Appellant.

*Mr. A. C. Gormley,* and *Messrs. Word & Word,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover damages for personal injury caused by the alleged negligence of the defendant. For the purposes of this decision, a sufficient statement of the case will be found in the opinion delivered by this court on the former appeal. (*Nord* v. *Boston & Mont. C. C. & S. M. Co.,* 30 Mont. 48, 75 Pac. 681.) Upon another trial the jury found in favor of the plaintiff. The present appeal is from the judgment rendered upon the verdict, and from an order overruling defendant's motion for a new trial.

Counsel for plaintiff makes the contention that the order denying the motion for a new trial cannot be considered upon the merits, for the reason that counsel for defendant failed to make legal, timely, or sufficient service of their statement in support of the motion in the district court, and therefore that the record embodying the matters relied on is not properly before this court. If this contention is sustained, we must, in reviewing the case, confine our discussion to such questions only as arise from teh judgment-roll. Counsel for defendant insist that such service as made of the statement was legal, timely, and sufficient, but, if not, that counsel for respondent waived all defects and irregularities in the proceedings, and may not now be heard to object to a review of this appeal on its merits. We shall first notice these contentions.

The undisputed facts touching the service and settlement of the statement are the following: The verdict was rendered on June 14, 1904. On the 16th, by stipulation by counsel, the time for the preparation and service of the statement on motion for new trial was extended for sixty days from June 24th. On August 19th, by a like stipulation, the time was again ex-

tended for thirty days from August 24th. On September 17th the court, upon good cause shown, further extended the time until October 24th. A. C. Gormley, counsel for plaintiff, was then absent from the county, being engaged in a canvass of the state as a candidate for Congress. He had up to August 15th or 16th had in his employ in his office as stenographer, Frances A. Bennett. At that time she left his employ to enter the office of her father. Her father's office adjoined that of Mr. Gormley, and the two were connected by a doorway. After that date and up to September 28th, when he left the city, whenever Mr. Gormley had any stenographic work to do, he had Miss Bennett do it for him on the "piece plan." On leaving the city Mr. Gormley closed and locked his office and left the key with his wife at the family residence in Great Falls. His residence was known to counsel for appellant. His wife received and attended to his mail. He was not present in the city but once from the time he first left it, until November 5th. In the meantime Miss Bennett had no access to his office.

On October 21st Mr. Cooper, one of counsel for defendant, wishing to serve the statement, went to Mr. Gormley's office with it. He found the office closed and locked. Having made inquiry for the whereabouts of Miss Bennett and being told that she was at "the Democratic headquarters," in a building across the street, he went in search of her and found her there. She was at that time regularly employed as stenographer by the Democratic central committee. There is some controversy as to what statement she made to Mr. Cooper, but assuming the latter's statement to be correct, she told him upon inquiry that she was authorized to accept service for Mr. Gormley; at any rate, she did accept service and promised to notify Mr. Gormley, but did not, in fact, do so, because telephone connection could not be had with him. At that time Mr. Cooper told her that he would extend the time, if desirable, in which Mr. Gormley might propose amendments to the statement. On November 4th, and before she had seen Mr. Gormley and without his knowledge, she stipulated with Mr. Cooper, for Mr. Gormley, for an

extension of time until November 10th, signing Mr. Gormley's name to the stipulation, and on the same day procured an order to be signed by the district judge, extending the time to November 10th.

On November 5th Mr. Gormley was in his office for a short time. He was found there by Mr. Cooper, who desired to know whether Mr. Gormley would repudiate the stipulation made by Miss Bennett in his behalf. At that time Mr. Gormley, as he says, questioned the service of the statement. Mr. Cooper insists that he questioned it only with reference to the time of it, but said nothing as to the authority of Miss Bennett to accept service. The record is somewhat indefinite as to what was said exactly; it is not controverted, however, but that Mr. Gormley stated that he had been too busy in the campaign to think about law business; that "there was question about that service," and that he "would take a little time to think it over before agreeing to anything." Mr. Cooper told him that he could have time to propose amendments if he desired it.

On November 9th, Mr. Cooper having concluded, apparently, that Mr. Gormley did not intend to recognize Miss Bennett's stipulation, submitted the statement to the judge for settlement; the paper containing the written submission reciting that "whereas, more than ten days have elapsed since the service of said proposed statement on motion for a new trial as aforesaid and no amendments having been proposed thereto or served upon counsel for defendant, and the time of the said plaintiff within which to propose amendments to said statement on motion for a new trial having elapsed," etc. In the meantime, on November 7th, Mr. Gormley obtained from the judge time in which to propose amendments "without waiving," as the order recited, "any rights to object to defendant's statement on the ground that the same was not served or filed in time, or for any other reason, the plaintiff reserving any and all rights to object to said statement," etc.

Finally the statement came on for settlement on December 8th. Counsel for plaintiff had in the meantime submitted cer-

tain amendments, prefacing them with a statement that he submitted them "without waiving his right to object to the settlement of the defendant's statement on motion for a new trial, on the ground, and for the reason that no legal, timely, or sufficient service of said statement was made, and plaintiff hereby reserving his right to make any and all objections because of the defendant's failure to serve and file said statement in time, as aforesaid, which rights were reserved to the plaintiff in the court's order extending the time," etc. At the conclusion of the proposed amendments was the following reservation: "The foregoing amendments are proposed with the reservations and objections first above mentioned, and, when the statement and amendments are brought on for settlement, proof will be offered in support of the plaintiff's said objections."

Evidence was introduced showing the manner and time of service as above narrated. The court settled the statement "without prejudice to plaintiff's said objections." When the motion came on for hearing, objection to its consideration was made as follows: "Before proceeding with the hearing of the defendant's motion for a new trial, the plaintiff renews the objections heretofore made to any order granting a new trial, and asks that said motion be denied on the ground and for the reason that no legal, timely, or sufficient service  *  *  *  was ever made  *  *  *  and plaintiff appears at the hearing  *  *  * without waiving any of his said objections." In its order denying the motion, all objections were overruled by the court, but no reason was assigned therefor.

It is said by counsel for plaintiff that the service was not timely, for the reason that the statute authorizing extensions of time in such cases (Code of Civil Proc., sec. 1897, amended by Session Laws, 1903, p. 38, Chap. XXVII), gives no power to the court or judge to grant an extension for a longer time than ninety days without the consent of the adverse party, and that since the order of September 17th was without his consent, service made during the time granted by it was not effectual. There is no merit in this contention. If the parties extend the time by stipu-

lation, the power of the court or judge in the premises is, for the time being, in abeyance. If application be made for an extension before the expiration of the stipulated period, upon good cause shown, such application calls into activity the power vested by the statute, and an extension may be granted without the consent of the adverse party, within the prescribed limit. (Spelling on New Trial and Appeal, sec. 450; *Curtis* v. *Superior Court,* 70 Cal. 390, 11 Pac. 652.) This must be true, else, wherever the parties venture to stipulate for time, this fact itself deprives the court of the power vested in it by the statute.

The next question for consideration, then, is: Was the service upon Miss Bennett sufficient? If not, did counsel, by anything he did thereafter, ratify her acceptance of service or waive his right to object to the statement because of her want of authority? The statute controlling the service of notices and other papers in the conduct of litigation is section 1831 of the Code of Civil Procedure. Under it service may be made upon the attorney of the adverse party, (first) personally, by delivery to the attorney of the notice or paper; or, (second) constructively by leaving the notice or paper in the office of the attorney, during his absence, with his clerk therein or with a person in charge thereof; or, (third) when there is no person in the office, by leaving the paper or notice in the office in a conspicuous place, between 8 A. M. and 6 P. M.; or, (fourth) if the office be not open, by leaving the paper or notice at the attorney's residence with a person of suitable age and discretion; or, (fifth) if the residence of the attorney be not known, by putting the notice or paper inclosed in an envelope, into the postoffice, directed to the attorney.

In this case, constructive service upon the attorney was attempted by delivery of the statement to Miss Bennett, his alleged clerk. The facts clearly show that Miss Bennett was not his clerk, nor was she in the office or in charge of it. She was not in the employ of Mr. Gormley in any capacity. From no point of view was this service, as made, sufficient, or any service at all. The fact that Miss Bennett had theretofore been

Mr. Gormley's clerk, that notice of her discharge had not been given Mr. Cooper, or that she assumed to act for Mr. Gormley, cannot avail. One dealing with a supposed agent must ascertain at his peril whether in fact the supposed agency exists.

Did Mr. Gormley, by any act done on November 5th or afterward, ratify her acceptance of service or waive his right to object to the proceeding upon the motion? If so, such ratification or waiver was made in the conversation with Mr. Cooper on November 5th, or by the securing of the order of the 7th, granting time to propose amendments. Nothing in the conversation of the 5th justifies the inference of waiver or ratification; for, though Mr. Gormley did not repudiate anything that Miss Bennett had done, nor say that she was not his clerk, yet he did refuse to agree to anything until he had time to think the matter over, thus clearly refusing to be bound by anything that had occurred up to that time as between Mr. Cooper and Miss Bennett. Mr. Cooper's purpose in going to Mr. Gormley's office was to ascertain if he would repudiate the stipulation made in his behalf by Miss Bennett on November 4th. Under the circumstances, Mr. Gormley was not bound to say whether he would or would not repudiate it. No inquiry having been made of him as to whether or not Miss Bennett was his clerk at the time she accepted service, he was not bound to repudiate any thing she had done. No adverse inference from his silence upon this subject is proper; for, as the record shows, he was then not fully informed of what had transpired during his absence, and it is not to be inferred that he was guilty of double dealing, as counsel for defendant seem to think, because he refused to agree to anything, or because he kept silent.

Nor did he ratify the act of Miss Bennett by obtaining the order of November 7th. He did not rely upon the stipulation made by Miss Bennett on November 4th and get an extension of time, but, so far as the record shows, obtained the grant of time upon the theory that the new trial proceedings had lapsed entirely, and in order that, if he should be mistaken, a correct

record of the case might still be made.   This is apparent from the fact that he had the order made without prejudice and with the reservation of all his rights to object on all grounds, not only to the settlement of the statement, but to the granting of a new trial.   It is apparent, also, that counsel for defendant two days later did not regard anything said on November 5th, or the obtaining of this order on the 7th, as a waiver of anything; for they submitted the statement for settlement as if the service made on October 21st was sufficient, and the main contention at the time of the settlement was whether, in fact, Miss Bennett was Mr. Gormley's clerk.

The mode of procedure in the settlement of statements and bills of exception, where the service has not been timely, is discussed at length in *Beach* v. *Spokane Ranch & Water Co.*, 25 Mont. 367, 65 Pac. 106, with citation of cases decided by this court as well as by the California court.   It is there held that it is proper for the judge, upon presentation of the statement for settlement, when objection is made that service has not been timely, either to decline to settle it, or settle it after incorporating in it the objections with the matter offered in support of the objections, and also anything to show waiver on the part of the objecting party, if a waiver is alleged; and that if it appears that service has been out of time and there has been no waiver, the motion should be denied.   It is also held that the mere form of the expression or language in which the objections are couched is unimportant, provided it clearly appears what the objections are.   The same rule must, perforce, apply where there has been no service at all, as was the case here; and we think with reference to the order of November 7th the same rule should apply.

It is clear that it was the intention of Mr. Gormley not to waive anything.   The fact that he obtained time can no more be treated as a waiver than may an appearance of counsel under the same circumstances, at the settlement of the statement or at the hearing of the motion, provided at each step, prior to such appearance, he preserves his right to object; and the matter

showing an alleged waiver must show it clearly by a preponderance of the evidence, for the burden is upon him who alleges a waiver to show it by clear and satisfactory proof.  This proof counsel for defendant say is in the record in the form of the reservation contained in the preface to the proposed amendments, in the clause ''and plaintiff hereby reserving his right to make any and all objections because of the defendant's failure to serve and file said statement in time,'' etc.  If this clause be treated as containing the only reservation made, of course then the defendant is right; but the preceding reservations may not be overlooked.  The whole accompanying statement must be taken together and the meaning gathered from it as a whole.  Also the reservation following the amendments must be looked to.  Taking them all together, the purpose is manifest to reserve the right to object on all grounds, for counsel say ''without waiving any right to object on the gound that no legal, timely, or sufficient service was made.''  And the concluding sentence following the amendments contains the language: ''The foregoing amendments are proposed with the reservations and objections first above mentioned.''  It is not only in the plural, referring to all the objections mentioned in the preface, but refers in terms to those ''first above mentioned,'' showing clearly the intention of Mr. Gormley not to waive any of the objections mentioned in the preface.

It is argued by counsel for defendant that the district court found upon conflicting evidence against the contention of the counsel for plaintiff, and that its finding thereon may not be disturbed.  From our point of view the evidence gives room for but one inference, and this supports the contention of plaintiff.

We are of the opinion that the contention of counsel for plaintiff must be sustained; that no service of the statement was ever made, and that counsel for defendant has failed to sustain the burden of showing that this lack of service was waived by any act done by Mr. Gormley.  The court should have denied the motion on the ground that the statement was not before it.  This conclusion disposes of the legal questions urged with a great

deal of force and plausibility in the brief of counsel; that the court erred in refusing to direct a nonsuit at the close of plaintiff's testimony, and in refusing to direct a verdict for the defendant at the close of the whole case.

The other errors assigned in the brief challenge the correctness of the action of the court in submitting certain instructions to the jury and in refusing to submit others requested by the defendant. Upon careful attention to these, however, we fail to perceive that the court committed any prejudicial error. The instructions submitted fully and fairly cover all the issues in the case and, we must presume, were justified by the facts before the court in the evidence. The criticisms of some of them are not well founded, and of others are exceedingly technical. For illustration we refer to paragraph 8 of the charge: ''The burden of proving by a preponderance of the testimony that the defendant was negligent in the particulars charged in the complaint, and that the injury to the plaintiff was the direct result of such alleged negligence, is upon the plaintiff, Nord. The burden is upon the defendant to show by a preponderance of the testimony that the plaintiff was guilty of contributory negligence at the time of the accident, and likewise to show that plaintiff assumed the risks and danger of the accident complained about.'' It is said of it that it imposed upon the defendant, in order to escape liability, the burden of proving both the defenses, contributory negligence and assumption of risk, whereas it would have been sufficient to establish either. If the paragraph should be read apart from the rest of the charge, this criticism might, perhaps, be just, but, reading the charge as a whole, we do not think the jury could possibly have misunderstood that their verdict should be for the defendant in case either defense was established by a preponderance of the evidence.

It is also said of it that it is erroneous in that it cast upon the defendant the burden of proof as to either of these defenses. So far as concerns the defense of contributory negligence, this criticism is based upon the defendant's theory of the case that

the injury appears to have been caused proximately by the plaintiff's own act, and the rule stated as the correct one in *Kennon* v. *Gilmer et al.*, 4 Mont. 433, 2 Pac. 21, and approved in *Ball* v. *Gussenhoven*, 29 Mont. 321, 74 Pac. 871, and other cases, is invoked. The present case, however, does not fall within the rule of these cases; at least, the pleadings do not bring it within the rule; and, as the facts shown by the proof are not before the court, we are not informed as to what the situation presented by them was. Except in the class of cases of which *Kennon* v. *Gilmer, supra,* is a type, the rule in this state is that contributory negligence is an affirmative defense, and the burden of establishing it by a preponderance of the evidence rests upon the defendant. (*Ball* v. *Gussenhoven, supra,* and cases cited.) The same rule applies to the defense of assumption of risk. (1 Thompson on Negligence, 368.)

Most of the instructions requested and refused were formulated on defendant's theory of the case, and, upon the record before us, were properly refused. The others refused are fairly embodied in those given; there was, therefore, no error in refusing them.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Appellant has submitted a petition for a rehearing herein, in which contention is made that the conclusions of the court are wrong, for the reasons (1) that it makes an erroneous application of the law of agency, and (2) that its construction of the language used by counsel of defendant in reserving his right to object to a settlement of the statement on motion for a new trial is clearly unwarranted.

1. In support of the first contention counsel says that the statement in the opinion that "one dealing with a supposed agent must ascertain at his peril whether in fact the supposed agency exists," embodies a principle not applicable to the facts of this case, because Miss Bennett having earlier in the year actually been the clerk of Mr. Gormley, counsel was entitled to treat her as still in the employ of Mr. Gormley until notified of her discharge. He cites sections 3150 and 3151 of the Civil Code, which lay down the rule that an agency is effectively terminated or the power of the agent revoked as to third persons only when notice has been given to them. These sections are but declaratory of the common-law rule, but they have no application to this case.

Miss Bennett was never the agent of Mr. Gormley for any purpose, so far as the record shows, except to receive service of papers while she was in his employ and in his office or in charge of it. She had no power to enter into stipulations for him for any purpose, and, under the express terms of the statute pointing out how constructive service may be made (Code of Civil Procedure, section 1831), she had not any authority whatever except during office hours, or, at any rate, while she was engaged in her duties in the office. Strictly speaking, she was, under the statute, but the passive agent by virtue of her employment to receive and acknowledge service in the office. She could not do anything actively to bind her employer. At the time of the alleged service she was not in the office nor in charge of it. Therefore, under any circumstances, her power to bind Mr. Gormley, if it existed at all, existed by virtue of some other relation than her employment as his clerk. So that, when Mr. Cooper came to deal with her in the "Democratic headquarters," in another building across the street, he did so with full knowledge that she was not Mr. Gormley's agent for the purpose of the business then in hand, unless specially authorized to transact it, and therefore he was bound at his peril to ascertain whether in fact she was so authorized.

Again: It is contended that the construction thus given section 1831, *supra,* is entirely too narrow and technical, and that the phrase "by leaving the notice or other paper with his clerk therein," should be construed to mean "by leaving the notice or other paper with a clerk employed by him." By the plainest rule of construction we think the phrase must be given the meaning we have given it in the original opinion, for evidently the purpose of the statute is that when service is made upon a clerk, the paper served must be left in the office and not elsewhere. This seems so clear as to leave no room for controversy.

2. As to the second contention, we deem it unnecessary to add anything to what has already been said. The construction of the language of the order of November 7th and of the statement of reservations accompanying the amendments, we think is fair and reasonable, and excludes the idea of waiver by Mr. Gormley or his ratification of anything done by Miss Bennett. A rehearing is denied.

*Denied.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.