### COLONIAL REFINING CO. v. LATHROP.

No. 7063—Opinion Filed June 6, 1917.

(166 Pac. 747.)

(Syllabus by the Court.)

**1. Evidence—Photographs—Value.**

The probative value of photographs depends upon their accuracy. They must be shown by extrinsic evidence to be faithful

representations of the place or subject, as it existed at the time involved in the controversy. And photographs taken to show more than this, with men in various assumed positions, and things in various assumed situations, intended only to illustrate hypothetical situations, and to explain certain theories of the parties, are incompetent.

## 2. Negligence — Contributory Negligence— Pleading as Defense.

An answer in an action for personal injuries, which only denies that the injury was caused by the negligence of defendant, and alleges that it was "wholly" caused by the negligence of the plaintiff, is in effect nothing more than a general denial, and does not plead contributory negligence.

The law requires the plaintiff to apprise the defendant in the beginning, as to what he relies upon for a recovery, and limits him to the facts pleaded. And it likewise requires the defendant to apprise the plaintiff of any special or affirmative defense he expects to make, by pleading the facts constituting such defense. There is no reason why one should be entitled to the light, and the other required to grope in the dark. Hence contributory negligence, to be available to the defendant, must be specifically pleaded, unless such contributory negligence appears from the allegations of the plaintiff's petition, or unless the plaintiff's own case raises the presumption of contributory negligence.

## 3. Corporations—Actions—Service of Process.

A return of the service of summons, on a domestic corporation, which shows that the president was not found in the county, and that the writ was served upon the managing agent, is sufficient. The statute contemplates that the absence of one officer from the county—"the chief officer"—opens the door for legally serving summons upon any one of the subordinates designated by the statute. It does not contemplate the absurdity of a multiplicity of chief officers, but makes the definite provision that if the one. single, "chief officer is not found in the county," then service may be made upon either the "cashier, treasurer, secretary, clerk, or managing agent."

Error from District Court, Payne County; A. H. Huston, Judge.

Action by Marvin Lathrop against the Colonial Refining Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

H. A. King, Reece & Grubbs, Chas. West, and H. H. Hagan, for plaintiff in error.

Robert A. Lowry and T. A. Higgins, for defendant in error. .

BRETT, J. On February 9, 1914, Marvin Lathrop, the defendant in error, filed suit in the district court of Payne county, against the plaintiff in error, the Colonial Refining Company, a corporation, to recover damages in the sum of $10,000 for personal injuries, alleged to have been sustained by Lathrop while in the employ of the said corporation. The parties will be referred to in this opinion as they appeared in the court below: that is, Lathrop, defendant in error, will be referred to as plaintiff, and the Colonial Refining Company will be referred to as defendant. The plaintiff alleged in his petition that he was employed by the defendant as an ordinary day laborer; that while so employed he was ordered and directed by William Fletcher, the defendant's foreman, to go up on the top of a large cylindrical tank to assist another employe in the filling of a five-gallon jug with sulphuric acid, which was to be taken from the tank by means of a bucket and poured into the jug; that the plaintiff did not know of the dangerous character of the acid, and that defendant negligently required him to perform this task without informing him of the dangerous character of the acid; that when the jug was nearly full of the acid, by reason of the oval surface of the top of the tank upon which it was sitting, it commenced to slide, and to prevent it from sliding off the tank and falling to the ground, he seized the jug, and when he seized it, a portion of the acid splashed into his face and eyes, causing him great pain and anguish, and inflicting upon him serious injuries. Summons was duly issued upon the petition, and the defendant made special appearance, and moved to quash the service of summons, which motion was overruled.

The defendant subsequently filed its amended answer, which consisted first of a general denial, then a special denial that William Fletcher was a vice principal, pleaded the assumption of risk, and closed by pleading—

"that whatever injuries, if any, were sustained by plaintiff herein were not in any manner caused by the negligence of this defendant, but such injuries claimed to have been sustain d by plaintiff were caused solely and on y by negligence, carelessness, and want of re of plaintiff herein, and the defendant is no manner liable therefor."

Plaintiff rep. d by a general denial. Upon the pleadings thus framed the cause went to trial, and resulted in judgment for plaintiff in the sum of $2,000, from which judgment the defendant appeals to this court.

There are a number of errors assigned, but there are only three that are urged and relied upon.

The first assignment urged is directed against the refusal of the court to quash the service of summons, the second complains of the court's refusal to instruct the jury upon contributory negligence, and the third complains of the refusal of the court to admit in evidence certain photographs. We will discuss these assignments in their inverse order.

1. The photographs offered in evidence, and which the court refused to admit, showed a man standing in assumed positions upon the tank upon which the plaintiff is alleged to have received his injuries, and each picture in addition also showed a jug sitting in different positions on the tank. The court had already admitted in evidence one photograph, showing the size, shape, and surroundings of this particular tank; but we think properly refused to admit in evidence these pictures, which were intended to illustrate a hypothetical situation, and to explain the theory of the defendant as to how the injuries complained of might have occurred. The picture showing the size, shape, and surroundings of this tank was competent; but the picture showing a man standing in assumed positions, and jugs placed in various assumed situations, serving merely to illustrate certain theories of the defendant as to how the accident might have happened, were incompetent, and, when objected to by plaintiff, were properly excluded. In Stewart v. St. Paul R. Co., 78 Minn. 110, 80 N. W. 855, the court, in speaking of the probative value of photographs, says:

"Their value depends upon their accuracy. They must be shown by extrinsic evidence to be faithful representations of the place or subject, as it existed at the time involved in the controversy."

In Babb v. Paper Co., 99 Me. 298, 59 Atl. 290, the court says:

"To be admissible, photographs should simply show conditions existing at the time in question. But photographs taken to show more than this, with men in various assumed postures, and things in various assumed situations, in order to illustrate the claims and contentions of the parties, should not be admitted. An examination of the excluded photographs shows that they fall within the latter class. They would serve merely to illustrate certain theories of the defendant as to how the accident happened." 9 Enc. of Evid. 779.

But the defendant cites Smith v. Territory, 11 Okla. 669, 69 Pac. 805, in support of its contention that these photographs should have been admitted. But that case is not in point. There the court held that photographs of the deceased, taken after death, and which were shown by extrinsic evidence to correctly show the exact location of the wounds and the course of the bullet which produced death were admissible on the theory that the photographs did correctly represent the location, nature, and character of the wounds. And that holding is correct, and is not in conflict with anything we have said, but is based upon facts very different from the facts in the case at bar, where the photographs did not purport to represent the exact conditions under which the plaintiff was injured, but only to illustrate a hypothetical situation.

In St. L. & S. F. R. Co. v. Dale, 36 Okla. 114, 128 Pac. 137, the pictures offered and admitted in evidence to show the topography of the country, the length and extent of the ditches in controversy, the timber and other permanent surroundings, were taken months subsequent to the time the damage was alleged to have been sustained, yet they were shown by extrinsic evidence to be faithful representations of the topography of the country, the ditches and other permanent surroundings, as they existed at the time involved in the controversy. The most that could be claimed in the case at bar is that it was within the discretion of the court as to whether or not these pictures should be admitted. And even upon that hypothesis it cannot be said the court abused its discretion.

2. The next assignment we shall notice is that the court erred in refusing to instruct the jury upon contributory negligence. The defendant in its brief says:

"It will be recollected that the answer raised the defense of contributory negligence, alleging: 'Further answering, defendant says that whatever injuries, if any, were sustained by plaintiff herein were not in any manner caused by the negligence of this defendant, but such injuries claimed to have been sustained by plaintiff were caused solely and only by negligence, carelessness, and want of care of plaintiff herein, and the defendant is in no manner liable therefor.'"

But the sufficiency of this paragraph as a plea of contributory negligence is specifically challenged by the plaintiff. And this presents the question squarely, Does this paragraph of the answer plead contributory negligence? We think not. It is, in effect, only another denial of any and all negligence on the part of the defendant. While contributory negligence, as the very words imply, arises when the plaintiff, as well as the defendant, has done some act negligently, or has omitted through negligence to do some act which it was their respective duty to do, and the combined negligence of the two parties directly produced the injury complained of. Washington v. B. & O. R. Co., 17 W. Va. 190.

And can it be said that an answer which denies any and all' negligence on the part of the defendant, and places the entire responsibility for the injury upon the negligence of the plaintiff alone, pleads contributory negligence? The word "contributory" means to contribute to, or aid in effecting a result. And under such a pleading, what is the defendant alleged to have contributed to, or what has he aided, in effecting the result? The pleading says that the plaintiff, and the plaintiff alone, was guilty of negligence; and, if that be true, then there was no negligence on the part of the defendant to which the plaintiff could have contributed. And the pleading as stated above is nothing more than another and general denial of any and all negligence, on the part of the defendant.

Enid City Ry. Co. v. Webber. 32 Okla. 180, 121 Pac. 235, Ann. Cas. 1914A, 569, is a case in which Webber had recovered a judgment against the railway company for personal injuries, and from that judgment the railway company appealed to this court; and among other things complained because the court below did not render judgment in its favor on the pleadings. The second paragraph of its answer was:

"Even if it be true that plaintiff received injuries as alleged, such injuries did not result from negligence of the defendant, but were the result of the negligence of the plaintiff."

To this answer Webber filed no reply, and the railway company insisted that Webber's failure to reply to that paragraph of the answer admitted that he was negligent, as pleaded in that paragraph, and that it should therefore have had judgment on the pleadings. But this court said:

"This answer required no reply; it stated no new matter, and was, in fact, merely a general denial."

In Watkinds v. Southern Pacific Co. (D. C.) 38 Fed. 711, 4 L. R. A. 239, the syllabus says in part that:

"A statement in an answer purporting to be a defense of contributory negligence, to an action for damages for an injury to the person, which only denies that the injury was caused by the negligence of the defendant, and alleges that it was 'wholly' caused by the negligence of the plaintiff, is not such a defense."

And in the body of the opinion, the court says:

"This defense is not a good plea of contributory negligence," and, "As I have said, it amounts to nothing more or less than another denial of the allegation in ,the complaint."

In Birsch v. Citizens' Electric Company, 36 Mont. 574, 93 Pac. 940, which was an action for personal 'injuries, the sixth paragraph of the defendant's answer was:

"That if plaintiff was injured at the time alleged, or at any other time, by coming in contact with one of the defendant's wires charged with electricity, such injury was wholly due to plaintiff's own neglect, and was not in any way due to any negligence on the part of defendant, or of any of its officers."

And the defendant insisted that this paragraph of its answer pleaded contributory negligence. But the court said:

"The only attempt made to plead contributory negligence is found in the paragraph of the answer quoted above, and that the allegations of that paragraph are insufficient is apparent. In the paragraph it is alleged that plaintiff's injury was wholly due to his own negligence, and was not in any way due to the negligence of the defendant. Contributory negligence on the part of plaintiff presupposes negligence on the part of the defendant. Beach on Contributory Negligence (2d Ed.) sec. 64; Wastl v. Montana Union R. Co., 24 Mont. 159, 61 Pac. 9. 'Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.' 7 Am. & Eng. Ency. Law (2d Ed.) 371. This definition is approved in Moakler v. Williamette V. R. Co., 18 Ore. 189, 22 Pac. 948, 6 L. R. A. 656, 17 Am. St. Rep. 717, and Montgomery G. L. Co. v. Montgomery & E. Ry. Co., 86 Ala. 372, 5 South. 735.     *     *     It goes without saying, then, that an answer which denies any negligence on the part of the defendant, and alleges that the injury resulted wholly from plaintiff's negligence, does not plead contributory negligence."

And this doctrine was reaffirmed by the Supreme Court of Montana in Melzner v. Chicago, M. & St. P. R. Co., 51 Mont. 487, 153 Pac. 1019, in which case the syllabus in part says:

"The allegation of the answer that deceased came to his death through his own carelessness and negligence is not a plea of contributory negligence, and so does not authorize instructions thereon."

And one of the grounds for reversing the case was that contributory negligence was injected into it for the first time by one of the instructions, the court saying:

"In the answer it is alleged that .Page came to his death through his own carelessness and negligence. This is not a plea of contributory negligence, as was pointed out in Birsch v. Citizens' Electric Co., 36 Mont.

574, 93 Pac. 940. These instructions are altogether out of place, and error was committed in giving them."

And this doctrine, we think, is supported by reason, and the better authorities. Cogdell v. Wilmington & W. R. Co., 132 N. C. 852, 44 S. E. 618; Hoffman v. Gordon, 15 Ohio St. 211.

This court has repeatedly said:

"The defense of contributory negligence, when well pleaded, if supported by any evidence, entitles the pleader to an instruction thereon by the court." City of Hugo v. Nance, 39 Okla. 640, 135 Pac. 346, and other cases.

And the defendant relies upon these cases. But these very cases imply that there is an improper, as well as a proper, way of pleading contributory negligence, and clearly recognize that there is a distinction between such a plea and a general denial. The opinion in Clemens v. St. Louis & S. F. R. Co., 35 Okla. 667, 131 Pac. 169, while not discussing the precise point raised in the case at bar, clearly recognizes the distinction between a general denial and pleas which amount to the same and contributory negligence, and quotes approvingly from 6 Cur. Law, 768, 769, as follows:

"While a denial of negligence and an allegation of contributory negligence are verbally inconsistent, they are not so in practice, and a defendant need not elect between the two defenses; nor does the plea of contributory negligence, when properly pleaded, admit the negligence as charged in the petition."

The opinion further quotes from the syllabus in Fowler et al. v. Brooks, 65 Kan. 861, 70 Pac. 600, which says:

"In an action for personal injuries, where defendant denies generally, and alleges contributory negligence, the latter allegation is not an implied admission of negligence rendering proof of negligence unnecessary and limiting the issues to that of contributory negligence"

—thus clearly indicating that the defense of contributory negligence is not raised by simply denying negligence on the part of the defendant and imputing all negligence to the plaintiff.

Besides, as a matter of common justice, we think that since the plaintiff must apprise the defendant in the beginning as to what he relies upon for a recovery, and is limited to the facts pleaded, the defendant should be required also to apprise the plaintiff of any special or affirmative defense he expects to make by pleading the facts constituting such defense, and should likewise be limited to the defense pleaded. We know of no reason why one should be entitled to the light and the other be required to grope in the dark. And the sound and just rule is that:

"Contributory negligence, to be available to the defendant, must be specifically pleaded, unless such contributory negligence appears from the allegations of the plaintiff's petition, or unless the plaintiff's own case raises the presumption of contributory negligence." Birsch v. Citizens' Electric Co., 36 Mont. 574, 93 Pac. 940; Pryor v. City of Walkerville, 31 Mont. 618, 79 Pac. 240; Orient Insurance Co. v. Northern Pacific R. Co., 31 Mont. 502, 78 Pac. 1036; Nord v. Boston & Mont. Con. C. & S. Min. Co., 33 Mont. 464, 84 Pac. 1116, 89 Pac. 647; Nelson v. Boston & Mont. Con. C. & S. Min. Co., 35 Mont. 223, 88 Pac. 785.

And in the case at bar neither of these conditions prevails, and we think the court did not err in refusing to instruct the jury upon contributory negligence.

3. The only remaining assignment urged is that the court erred in refusing to quash the service of summons. The return of summons is the following:

"Received this writ February 9, 1914, and as commanded therein, I summoned the following persons of the defendant within named, at the times following, to wit: President or secretary not being in Payne county, I served by delivering a copy to Roy B. Jones, as manager of the Colonial Refining Company, at Cushing, Okla., Feb. 14, 1914."

The statute prescribing the service of summons on a domestic corporation is section 4715, Revised Laws 1910, and reads as follows:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer, or upon an agent, duly appointed to receive service of process; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent; or, if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

The question is, Does this return meet the requirements of the statute? The defendant insists that the negation that the president was in the county did not negative the presence of a chief officer in the county, and urges that, even if the president was absent from the county, "if the vice president was in the county at the time the president was absent therefrom, he was the chief officer within the meaning of the statute." And says the word "chief officer" must have some significance separate and distinct frim president, chairman of the board of directors, etc.

We think it is true that it does, and that it is a blanket phrase, intended to cover the chief officer of corporations who might perchance be designated by some other official title than the ones specifically set out and mentioned in the statute. But there can be but one chief officer of a corporation; for if one is chief, then all others must necessarily be subordinate. The very meaning of the word itself precludes any other idea. But the official title of the chief officer need not be president or mayor, but may be whatever the corporation designates, and under this blanket provision of the statute, if one is the chief officer, no matter what his official title may be, the statute makes him subject to service of summons.

While it is true that it has been held that service on a vice president, in the absence of the president from the county, is sufficient, yet many corporations have no vice president; and we cannot, by interpolation, place a greater burden on litigants than that which the statute has already imposed, by requiring a return to show that the vice president, an officer not mentioned by the statute, was also absent from the county. While the return in this case may not be worded just as we would have worded it, yet it does say the president was not found in the county, and that the writ was served on Roy B. Jones, manager of the corporation. And the statute specifically provides that if the "chief officer is not found in the county," whether he be president or designated by some other official cognomen, the service may be made "upon its cashier, treasurer, secretary, clerk, or managing agent." And this return says the corporation's president, its chief officer, was not in the county, and that service was made upon one of the subordinates specifically designated by the statute. This we think was sufficient, and the court did not err in overruling the motion to quash. The statute contemplates that the absence of the one officer from the county—the "chief officer"—opens the door for legally serving summons upon any one of the subordinates designated. It does not contemplate the absurdity of a multiplicity of chief officers, and that the litigant must run the gauntlet of a descending scale before being entitled to make service upon the subordinates designated, but makes the definite provision that if the one, single "chief officer is not found in the county," then service may be made upon either the "cashier, treasurer, secretary, clerk, or managing agent." If the service in the case at bar had been made under the last clause of the section, by leaving a copy at the office or usual place of business, with the person having charge thereof, then, of course, it would

have been necessary to negative, not only the presence of the chief officer in the county, but also the presence of the cashier, treasurer, secretary, clerk, and managing agent. But where service is made upon either the cashier, secretary, clerk, or managing agent, it is necessary to negative only the presence of the chief officer.

The judgment is affirmed.

All Justices concur; THACKER, J., concurring in conclusion only.